UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RONNIE JOSEPH JOHNSON,<br><br>Defendant. | Case No.: SACV 13-00190-CJC<br><br>**ORDER DENYING DEFENDANT'S MOTIONS** |

## I. INTRODUCTION

The United States has charged Defendant Ronnie Joseph Johnson with one count of armed bank robbery, in violation of 18 U.S.C. § 2113, and one count of using and carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). (*See*

Dkt. 1 ["Indictment"].) The charges arise from the October 15, 2008 robbery of a Citibank branch in Orange, California (the "Citibank robbery"). (*Id.*)

Before the Court are seven motions submitted by Defendant. They are:

1. A motion in limine to exclude evidence of other bank robberies. (Dkt. 123.)
2. A motion in limine to exclude expert testimony, phone calls, and certain identifications. (Dkt. 124.)
3. A motion to dismiss the case for pre-indictment delay. (Dkt. 125.)
4. A motion to dismiss the case for vindictive prosecution. (Dkt. 126.)
5. A motion in limine to exclude the government's cellular telephone expert. (Dkt. 148.)
6. A motion to compel disclosure of the government's witness list, exhibit list, and transcripts of certain recordings the government plans to introduce into evidence. (Dkt. 149.)
7. A motion to preclude the introduction of phone calls recorded while the Defendant was in custody. (Dkt. 150.)

The Court has reviewed the motions, the government's oppositions to the motions, and Defendant's replies to some of the motions.[1] For the following reasons, all seven motions are DENIED.

---

[1] Defendant appears not to have filed reply briefs to the government's oppositions to either the motion in limine to exclude evidence of other bank robberies, (Dkt. 123), or the motion to exclude expert testimony, phone calls, and certain identifications, (Dkt. 124).

## II. ANALYSIS

### A. Motion in Limine to Exclude Evidence of Other Bank Robberies

Defendant's first motion indicates that he believes that the government intends to introduce evidence of six other bank robberies to which Defendant has an alleged connection. (Dkt. 123 at 3 (identifying robberies).) He argues that evidence of those robberies should be excluded under either Rule 403 or Rule 404(b) of the Federal Rules of Evidence. In opposition, the government clarifies that it intends to introduce only evidence from *two* prior bank robberies, both of which occurred in the nine months preceding the Citibank robbery. Evidence of those robberies should be admitted, the government says, because several characteristics of those robberies match the Citibank robbery, and the previous robberies are therefore probative of Defendant's presence at the Citibank robbery.

Under Rule 404(b), evidence of a prior "crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). The evidence *may* be admissible, however, for other purposes, including "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* Chiefly at issue here is the exception for identity, which "requires that the characteristics of the other crime or act be sufficiently distinctive to warrant an inference that the person who committed the act also committed the offense at issue." *United States v. Perkins*, 937 F.2d 1397, 1400 (9th Cir. 1991). When a defendant is charged with a robbery, and prior robberies by the same defendant share "peculiar, unique or bizarre" characteristics with the charged robbery, evidence of the prior robberies does not violate Rule 404(b). *U.S. v. Ezzell*, 644 F.2d 1304, 1306 (9th Cir. 1981). By contrast, if the robberies only share features that are "so common to most bank robberies as to be entirely unhelpful,"

Rule 404(b) bars the admission of the evidence of the prior robberies. *Id.*; *see also United States v. Luna*, 21 F.3d 874, 881 (9th Cir. 1994) (evidence of a prior robbery was inadmissible because all the incidents shared were "generic features of a takeover robbery" like "guns, masks, gloves, bags," the use of "profanity," a "loud entry," and the "abuse of bank employees").

Here, the prior robberies from which the government seeks to introduce evidence share sufficiently particular commonalities with the Citibank robbery to justify that evidence's admission. The government describes eleven commonalities between the two prior robberies and the Citibank robbery:

1. All three robberies were carried out in the morning before 10:00 a.m., the government says, due to Defendant's preference for robbing banks at a time of day with fewer employees, open vaults, and less customer traffic.
2. All three robberies involved between three and five individuals, including—the government says—Defendant.
3. All three robberies targeted banks in Orange County, California that lacked plexi-glass barriers separating customers from tellers.
4. All three robberies targeted banks located near a freeway.
5. Defendant is alleged to have worn all black or all black and grey clothing in all three robberies.
6. Defendant is alleged to have worn a fishing hat in at least one of the prior robberies and the Citibank robbery.
7. All three robberies involved two vehicles: (1) a stolen Toyota Camry used for the approach to the bank itself (the "approach car"), because of that particular model's ease of theft, and (2) a larger car (the "getaway car"), in which the robbers could lie down and conceal themselves, used for returning to the freeway from the approach car.

8. During the robberies, the driver of the getaway car would park that car in a secluded location within approximately one mile of the target bank, near a freeway, and remove or lower the backseat of that car.

9. The other robbers would then proceed in the approach car from the secluded location to the bank and rob the bank in takeover fashion, displaying a firearm and forcing tellers into the vault to remove money.

10. The robbers would then exit the bank and return in the approach car to the getaway car. They would all get in the getaway car and abandon the stolen approach car.

11. Finally, the robbers would proceed to one of the robbers' homes to divvy up the stolen money.

(Dkt. 162 at 2–3 (record citations omitted).)

These commonalities, in total, easily establish that evidence of the two prior robberies is admissible under Rule 404(b). To be sure, some of the commonalities are stronger than others. It is unremarkable, for example, that bank robbers occasionally wear all black clothing, that they rob banks in takeover fashion, and that they drive to a robber's house to split proceeds afterwards. Other commonalities are much stronger, however: Defendant's unusual choice to wear a fishing hat, the method of using an approach vehicle and a getaway vehicle, one of which was parked some distance from the bank and the other of which was always a stolen Toyota Camry, and the robbers' choice to rob banks before 10:00 a.m. in the morning. The Ninth Circuit has approved the admission of analogously strong evidence under Rule 404(b). *See United States v. Rrapi*, 175 F.3d 742, 750 (9th Cir. 1999) (evidence that a defendant had committed prior burglaries that, like the charged burglary, "involved using crowbars and climbing on the roof [and] an accomplice wait[ing] outside while someone would break into safes" was admissible because it "fit precisely into a Rule 404(b) exception").

Nor is the evidence inadmissible under Rule 403.  The evidence of the prior bank robberies is, for obvious reasons, highly relevant to whether it was Defendant who committed the Citibank robbery, and there is no indication of unfair prejudice. Defendant's motion to exclude evidence of the prior bank robberies is therefore DENIED.[2]

### B. Motion in Limine to Exclude Expert Testimony, Phone Calls, and Identifications

Defendant's second motion has three parts.  First, he seeks to exclude evidence from any expert witnesses who have not yet provided written summaries of their testimony to him.  Second, he moves to exclude phone calls between Defendant and two other individuals regarding splitting proceeds from an earlier bank robbery.  Third, Defendant seeks to preclude witnesses from identifying him in photographs or videos.

As to expert witnesses, aside from a cell phone expert discussed *infra*, Defendant has failed to identify any particular expert witness whose testimony he would like to preclude.  Absent identification of a particular witness and argument as to why that witness will give inadmissible evidence, the Court can make no informed ruling on Defendant's motion.  His motion to exclude unidentified expert testimony is therefore DENIED.

Defendant's motion to exclude phone calls between Defendant and others regarding splitting proceeds from an earlier bank robbery is also DENIED.  Those phone calls are admissible to demonstrate Defendant's relationship to individuals he spoke with in the phone calls, who—the government expects to show—participated in the Citibank

---

[2] Perhaps in an admission that the robberies at issue share certain distinctive features, Defendant did not file a reply brief responding to the government's opposition to this motion.

robbery. Demonstrating that relationship is a non-propensity use of the phone calls. Courts commonly permit analogous evidence. *United States v. Foster*, 652 F.3d 776, 785 (7th Cir. 2011) (evidence of prior criminal acts was admissible because it demonstrated that the defendant and a witness for the prosecution "knew one another well not merely in a social setting but in an ongoing criminal relationship"); *United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996) ("One legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed."). Nor does the evidence violate Rule 403. It is highly probative evidence of Defendant's involvement with the other individuals alleged to have participated in the Citibank robbery. And Defendant is not likely to be unfairly prejudiced by the evidence, which is not highly inflammatory.

Similarly, Defendant's motion to preclude witnesses from identifying him in photographs is DENIED. The Ninth Circuit has held that "a lay witness may give an opinion regarding the identity of a person depicted in a photograph if that witness has had sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful." *United States v. Beck*, 418 F.3d 1008, 1014 (9th Cir. 2005). This standard gives rise to a totality-of-the-circumstances test, under which the helpfulness of a lay witness's identification of a defendant depends on the presence of factors like "the witness's familiarity with the defendant's appearance at the time the crime was committed," "the witness's familiarity with the defendant's customary manner of dress," "whether the defendant disguised his or her appearance during the [relevant] offense," and "whether the witness knew the defendant over time and in a variety of circumstances." *Id.* (internal citations omitted).

Here, an application of this test clearly indicates that the proposed testimony is admissible.[3] Exhibits submitted under seal indicate that the government will demonstrate

---

[3] As with the previous motion, Defendant submitted no reply papers, in an apparent admission that the government has the better of this argument.

at trial a longstanding acquaintance between Defendant and the witnesses who may attempt to identify him in photographs or videos.  Insofar as Defendant is dissatisfied with the extent of those witnesses' familiarity with him, "cross-examination exists to highlight potential weaknesses in lay opinion testimony." *Beck*, 418 F.3d at 1015.

### C. Motion to Dismiss for Pre-Indictment Delay

Third, Defendant moves to dismiss the indictment for pre-indictment delay.  "The Fifth Amendment guarantees that defendants will not be denied due process as a result of excessive preindictment delay." *United States v. Sherlock*, 962 F.2d 1349, 1353 (9th Cir. 1989).  Courts in the Ninth Circuit evaluate pre-indictment delay under a two-pronged test.  First, the defendant "must prove that [he] suffered actual, non-speculative prejudice from the delay." *Sherlock*, 962 F.2d at 1353.  Second, the defendant must demonstrate that the delay, "when balanced against the prosecution's reasons for it, offends those fundamental conceptions of justice which lie at the base of our civil and political institutions." *Id.* at 1353–54.  "A showing of actual prejudice is required before the second prong will be considered." *United States v. Doe*, 149 F.3d 945, 948 (9th Cir. 1998).

To satisfy his burden under the first prong, Defendant must produce "proof that demonstrates exactly how the loss of evidence or witnesses" due to pre-indictment delay "was prejudicial." *United States v. Barken*, 412 F.3d 1131, 1135 (9th Cir. 2005).  This burden is "heavy and is rarely met." *Id.*; *see also Sherlock*, 962 F.2d at 1354 ("[W]e frequently find actual prejudice lacking.").  Here, Defendant alleges that his investigator was only able to contact five of the eight potential witnesses to the Citibank robbery. And two of those witnesses indicated that while they may have been able to identify the bank robbers closer to the date of the robbery, the passage of time has made it unlikely that they would successfully be able to do so now.  (Dkt. 125-2 ¶¶ 5; 9.)

These difficulties do not constitute the "actual, non-speculative prejudice" that Defendant is required to demonstrate. First, there is no reason to believe that the witnesses Defendant identifies would actually exonerate him; it may be that their inability to recall the robbers' faces due to the passage of time hurts the *government*, not Defendant. Defendant's speculation regarding how the witnesses would have testified years ago cannot establish actual prejudice. Moreover, the Ninth Circuit has "emphasized that protection from lost testimony generally falls solely within the ambit of the statute of limitations." *Sherlock*, 962 F.2d at 1354. When the government brings a case within the statute, and the defendant cannot "indicate how [witnesses] would have testified had their memories not dimmed," actual prejudice is not present. *Id.* Accordingly, Defendant has failed to establish the first prong of the test for pre-indictment delay, and his motion to dismiss the indictment is DENIED.

**D. Motion to Dismiss for Vindictive Prosecution**

Defendant's fourth motion is to dismiss the case for vindictive prosecution. A defendant seeking to dismiss an indictment on this ground is "entitled to a presumption of vindictiveness" if he can show that new charges were filed against him "because [he] exercised a statutory, procedural, or constitutional right in circumstances that give rise to an appearance of vindictiveness." *United States v. Jenkins*, 504 F.3d 694, 699 (9th Cir. 2007). Should that presumption attach, the government may rebut it by showing that "the additional charges did not stem from a vindictive motive, or [were] justified by independent reasons or intervening circumstances that dispel the appearance of vindictiveness." *Id.*

In 2008, Defendant was charged with participating in another bank robbery, which occurred in January 2008. *See United States v. Sanders et al.*, SA CR 08-267 CJC ("Johnson Case 1"). Defendant was convicted, but the Ninth Circuit reversed his

conviction and remanded the case for a new trial. *See United States v. Pritchard*, 485 Fed. Appx. 199 (9th Cir. 2012) (unpublished). A few months before Defendant's retrial, the government sought the indictment in this case. Counsel for Defendant speculates that the government may have sought this indictment because Defendant chose to proceed to a retrial of Johnson Case 1 rather than accept a "global" plea offer. (Counsel concedes that there is no documentary evidence that a plea deal was ever offered, and that Defendant insists that his previous counsel never presented a plea deal to him.)

No presumption of vindictive prosecution arises in this case. As an initial matter, in "almost every case in which courts have condemned prosecutions as vindictive, the defendant, after exercising some procedural right, had been confronted with a more serious or an additional charge arising out of the *same nucleus of operative facts* as the original charge." *United States v. Robison*, 644 F.2d 1270, 1272 (9th Cir. 1981) (emphasis added); *see also United States v. Martinez*, 785 F.2d 663, 669 (9th Cir. 1986) ("If . . . the second charge is unrelated to the first, the presumption does not arise."); *Jenkins*, 504 F.3d at 701 ("[T]he mere filing of a second, unrelated charge after a first charge does not give rise to a presumption of vindictiveness.").

To be sure, it is not true that a presumption of vindictiveness can *never* arise when two sets of charges are unrelated. *Jenkins*, 504 F.3d at 701 ("[W]e do not read *Martinez* as holding that a presumption of vindictiveness can *never* arise when the second charge is unrelated to the first."). But the Ninth Circuit has applied such a presumption only when the exercise of a constitutional right in one case "triggers" a prosecution in another case. In *Jenkins*, for example, the defendant was arrested for smuggling marijuana across the U.S.–Mexico border. At the time of her arrest, she told authorities that she believed the vehicle she had been driving contained illegal aliens, not marijuana, and she detailed multiple occasions on which she had smuggled illegal aliens across the border. She subsequently went to trial on the marijuana charge, where she testified from the stand

regarding her past smuggling activities. The government then filed an indictment alleging alien smuggling. The Ninth Circuit affirmed the district court's dismissal of the new indictment on vindictiveness grounds, noting that the defendant's "exercise of her right to testify that she thought she was once again smuggling aliens can easily be viewed as triggering the filing of the alien smuggling charges." *Id.* at 701. It distinguished *Martinez*, where the defendant was charged with conspiring to send letter bombs in Colorado. He fled to Mexico and then attempted to reenter the United States in Arizona, where he made false statements to officials and was arrested. He was acquitted on the Colorado charges, whereupon prosecutors indicted him for the false statements he had made in Arizona. The Ninth Circuit refused to dismiss the Arizona indictment, saying that even if the Arizona prosecutors *had* decided to indict the defendant because of the Colorado acquittal, that choice did not raise a presumption of vindictiveness, because the defendant "could have exercised no right in the Colorado trial that would have affected the Arizona indictment." *Martinez*, 785 F.2d at 670. The *Jenkins* court, by contrast, observed that the defendant's decision to testify in her marijuana trial had *everything* to do with her subsequent prosecution for alien smuggling; the one "trigger[ed]" the other. *Jenkins*, 504 F.3d at 701.

This case is like *Martinez*, not *Jenkins*. Defendant's decision to proceed to trial in Johnson Case 1 had nothing to do with this action. It provided the government with *no* new material for this prosecution. And, moreover, Defendant's asserted timeline does not even make much sense. The indictment in this case was brought nearly four months *before* the Johnson Case 1 retrial began, casting significant doubt on Defendant's assertion that his choice to proceed to trial directly precipitated the government's decision to prosecute his alleged involvement in an unrelated bank robbery. Put differently, Defendant has not adequately demonstrated any causal link between the government's decision to prosecute him in this action and his decision—months *later*—to proceed to trial in Johnson Case 1. An appearance of vindictive behavior on the part of the

government therefore does not exist, and Defendant is not entitled to a presumption of vindictiveness.  His motion is DENIED.

**E.  Motion in Limine to Exclude the Government's Cell Phone Expert**

Fifth, Defendant moves to exclude the government's cell phone expert, Senior Lead Analyst Antoinette Nunez ("SLA Nunez"), on the basis that the government has failed to provide Defendant with an adequate summary of SLA Nunez's testimony.  On June 1, 2016, the government sent counsel for Defendant a letter indicating that it planned to call SLA Nunez at trial and identifying (by Bates number) the specific records SLA Nunez would discuss. (Dkt. 148 Exh. A.)  The letter also indicated that SLA Nunez's testimony will concern the "[i]nterpretation of cellular telephone records," explain concepts of "call origination and termination, direction and duration of call, cellular towers, network elements, and Global Positioning System ("GPS") coordinates of particular towers," and reference records of calls made by a particular telephone on October 15, 2008. (*Id.*)  The government stated that SLA Nunez's testimony would identify the "approximate geographic area" the relevant cell phone was operating in on the date of the Citibank robbery.  (*Id.*)

Unsatisfied with this disclosure, Defendant moved to exclude SLA Nunez.  He argued that even though his counsel could "anticipate what Ms. Nunez may testify regarding based on his experience," the government had done nothing more than provide "a list of topics Ms. Nunez may discuss," and that it had therefore failed to meet its technical disclosure obligations. (Dkt. 148 at 7.)  The government subsequently supplemented its disclosure, writing another letter to Defendant which explained in more detail how SLA Nunez will use records provided to her to locate where the cell phone in question was being used on the date of the Citibank robbery.  Defendant nonetheless doubled down in his reply brief, insisting that the disclosure is insufficient.

Defendant's motion elevates form over substance. He has been provided with the SLA Nunez's curriculum vitae and is familiar with her qualifications. (Dkt. 148 Exh. C.) He knows that SLA Nunez will testify that she procured phone records and used those records to create maps and videos that the government has produced to Defendant. (Dkt. 158 Exh. 5.) He knows that the purpose of the maps and videos is to "represent[] an approximation of the geographical area" where his telephone was being used on the date of the robbery. (*Id.*) And he knows what software SLA Nunez used to create the maps and videos. (*Id.*) The Court is persuaded that this level of disclosure is adequate for the purposes of admitting SLA Nunez's testimony at trial.[4]

### F. Motion to Compel Disclosure

Sixth, Defendant moves to compel the government to disclose its witness list, exhibit list, and transcripts of certain phone calls at least two weeks before trial. (Recordings of the phone calls are already in Defendant's possession.) He says that pretrial disclosure is necessary for him to have an adequate opportunity to prepare his defense, and notes the Ninth Circuit's holding that a district court's decision to compel pretrial disclosure of at least witness lists "fit[s] comfortably within the court's authority" under the Federal Rules of Criminal Procedure and the court's "inherent authority to manage its docket," *United States v. W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008). The government responds by arguing that it has actually produced a relatively narrow list of

---

[4] Defendant argued in his motion that the disclosure of SLA Nunez's testimony was untimely. The Court disagrees; given the recent continuance of the trial, Defendant plainly has ample time to prepare to cross-examine SLA Nunez on her techniques. Defendant also argued that the Court should restrict SLA Nunez's testimony to only topics requiring expert knowledge. In his view, while SLA Nunez may be permitted to testify regarding her use of cell phone records to approximate the location of a cell phone, she should not be permitted to testify as to mundane topics like an "explanation of telephone numbers" or the "duration of calls." Accepting Defendant's argument would lead to absurdly fragmented expert testimony. As the government correctly argues, even facts established by the phone records require some discussion from an expert witness in order for the expert's testimony to make any sense. Perhaps wisely, Defendant abandoned both this argument and the argument that the expert disclosure was untimely in his reply brief.

evidence it will use, and that should the Court be inclined to impose a deadline on the disclosure of the exhibit list, witness list, and transcripts, the deadline should be no earlier than six days before trial.

The Court is not persuaded that it should impose hard disclosure deadlines in this case. Counsel for both the government and Defendant are capable and can be expected to cooperate in the exchange of the relevant materials before trial. Nonetheless, the Court is confident that disclosure *earlier* than the government's proposed deadline—six days before trial—will streamline the trial process and permit the parties to address disagreements before trial. Defendant's motion is DENIED.

### G.  Motion to Preclude the Introduction of Phone Calls

Finally, Defendant moves to preclude the introduction of phone calls made by Defendant while he was in custody. From Defendant's motion, it appears that he has had some trouble acquiring recordings of those phone calls, which the government managed to obtain with relative ease. Defendant would like the government to disclose how exactly, and by what legal process, it came into possession of the phone calls.

Defendant's motion is DENIED. He does not attempt to describe any particular legal process the government was required to use when obtaining the phone calls, does not indicate how the government violated that process or otherwise committed wrongdoing, and does not—in any event—make *any* effort to argue why, if the government did violate some non-specified standard, suppression of the phone calls would be the correct remedy for that violation. There is accordingly no reason to grant his motion.

//

## III. CONCLUSION

For the foregoing reasons, Defendant's motions are all DENIED.

DATED:   July 25, 2016

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE